E-FILED
Wednesday, 05 July, 2006  03:38:31 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| HELEN MARTIN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 04-CV-2197** |
| | ) | |
| DISCOUNT SMOKE SHOP, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#13) filed by Defendant, Discount Smoke Shop, Inc. Following this court's careful consideration of the arguments of the parties and the documents provided by the parties, Defendant's Motion to Strike (#19) is GRANTED in part and DENIED in part, and Defendant's Motion for Summary Judgment (#13) is GRANTED.

## FACTS[1]

Plaintiff, Helen Martin, suffers from mild mental retardation. In 1987, Plaintiff sought assistance through the Developmental Services Center (DSC) to obtain a job. Plaintiff thereafter received assistance from DSC in obtaining employment, vocational counseling and job training. Plaintiff held various jobs she had obtained through DSC.

On August 17, 2001, Plaintiff submitted an application for employment with Defendant. She was interviewed that day by Judy Splittstoesser, the manager of Defendant's store on Prospect Avenue in Champaign, and by Karen Tatman, the assistant manager. On her application for employment, Plaintiff stated that she was a "slow learner." During her interview, Plaintiff informed

---

[1] The statement of facts in this case is based upon Defendant's Statement of Undisputed Facts, Plaintiff's Statement of Additional Material Facts, the parties' Responses, and the documents submitted by the parties.

Splittstoesser and Tatman that she was "mildly retarded" and had a job coach provided by DSC. Plaintiff told them that her job coach would come to the job site, watch Plaintiff perform her job and train Plaintiff on how to perform her job with Defendant. At the interview, Splittstoesser hired Plaintiff as a cashier and told Plaintiff that it was not a problem for Plaintiff to have a job coach help train her. Plaintiff's job coach at that time was Shae Ellington.

Plaintiff began her employment with Defendant on August 18, 2001. In her position as a cashier, Plaintiff's essential duties included interacting with customers in a friendly and efficient manner, completing sales transactions (including the collection of money and coupons from customers, making adjustments to the bill based upon the coupons, and calculating and returning change), operating the cash register and lottery machine, locating products for customers, pulling back stock, and cleaning the store. In her affidavit, Splittstoesser stated that, after she hired Plaintiff, Ellington called her and requested that she communicate all issues regarding Plaintiff's performance to Ellington, and not to Plaintiff.

Splittstoesser stated that cashiers at the store typically receive 12 hours of training. She stated that, normally, two employees were assigned to a shift at the store, but that, during training, three employees were assigned to a shift so that one employee could be responsible for training and overseeing the new employee. Splittstoesser stated that three employees were assigned to every shift Plaintiff worked. Splittstoesser further stated:

> Based upon my personal observations and based upon reports
> that I was receiving from other employees, I concluded that
> [Plaintiff], despite her training, was not meeting expected standards
> of performance of the cashier position. Specifically, I determined

2

that [Plaintiff] was having trouble checking out customers with more
than one product (charging for only one of the products on several
occasions), assisting more than one customer (appearing to become
stressed, yelling at customers and/or running to the back of the store
when faced with more than one customer), handling coupon
transactions and providing the right change to customers.  In addition,
I also found that [Plaintiff] would begin to cry and become stressed
if other employees attempted to assist her with her duties.  In fact, on
at least one occasion during her training, [Plaintiff] ran to the
bathroom in an effort to compose herself after becoming stressed by
her job duties.

Splittstoesser stated that she raised her concerns about Plaintiff's performance with
Ellington, who then addressed the concerns with Plaintiff.  Splittstoesser stated that, in her opinion,
Plaintiff's work performance was not improving despite the assistance of her job coach.
Splittstoesser therefore made the decision to terminate Plaintiff's employment.  Plaintiff's last day
of work was August 25, 2001.  Plaintiff worked a total of 20. 25 hours for Defendant.  According
to Splittstoesser, Plaintiff was in training for all of these hours.  Splittstoesser listed six other
employees, who did not claim to be disabled, who were terminated by Defendant shortly after their
employment began based upon similar performance issues.  Defendant provided documentation
regarding the employment and termination of these employees.

At her deposition, Plaintiff testified that she was diagnosed with mild mental retardation in
kindergarten.  She testified that she is a "very slow learner" and is "very slow at comprehending

3

things." She stated that she is unable to comprehend or think quickly. She testified that she has to ask people to repeat what they are saying and ask them to go slow so she can understand what the person is saying. Plaintiff testified, however, that she graduated from high school, taking some special education classes and some regular classes. Plaintiff also testified that she reads books once or twice a month and is able to take care of herself and handle her own financial affairs. She testified that she has a driver's license and drives on her own.

Plaintiff provided this court with documentation from the DSC. These documents included an "Independent Living Skills Inventory" completed by Ellington on January 24, 2001. This inventory showed that Plaintiff received the highest available score of "4" regarding all of the assessed communication skills. A score of "4" means "does independently." According to this inventory, Plaintiff had a score of "4" on such skills as: following complex multi-step spoken directions; attending to and understanding simple conversation (2-3 minutes); participating in simple conversation with initiation, maintaining topic and taking turns; and using complete sentences with acceptable grammar and syntax. The inventory also stated that Plaintiff showed "evidence of reasoning and problem solving" and related "experiences/ideas in an organized, understandable manner." A February 8, 2001 assessment performed on Plaintiff by DSC staff indicated that Plaintiff had a high level of independence in many skill areas and had the ability to learn a wide variety of work skills. This assessment also stated that Plaintiff had good language comprehension and expression, though she could struggle with more complicated thoughts. An Individual Service Plan prepared by DSC dated February 27, 2002, stated that Plaintiff had good communication skills, could count money reasonably well and was capable of basic addition and subtraction.

Plaintiff testified that Karen Tatman trained her during her employment with Defendant and

that Ellington was there some of the time as well. Plaintiff testified that Ellington was not allowed to stand with her behind the counter after her first day of employment. Plaintiff testified that she was able to perform all of her job duties satisfactorily prior to her termination and stated that Splittstoesser and Tatman told her she was doing a good job. However, Plaintiff also testified that she had some problems with coupons and the lottery machine. Plaintiff testified that she was being trained, at least "a little bit," the entire time she worked for Defendant. However, Plaintiff also testified that she received no training on the fourth and fifth day of her employment with Defendant. Plaintiff testified that she felt on her first and second day that she "knew [she] couldn't do it." She testified, "It was too quick. They were doing it too fast, trying to teach me everything too [fast]." Plaintiff testified that she told Splittstoesser that she needed more training, but Splittstoesser said they couldn't give her any more time. Plaintiff testified that she thought she needed about a month of additional training. Plaintiff testified that it was possible the decision to terminate her employment was made because she was not meeting Defendant's standards.

Following her termination, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission (EEOC). She stated in her charge that she was capable of performing the cashier position for Defendant with reasonable accommodations, but Defendant refused to allow her reasonable accommodations and terminated her because of her disability. On June 18, 2004, the EEOC issued a Notice of Right to Sue. Plaintiff filed her Complaint (#1) in this court on September 17, 2004. Plaintiff alleged that Defendant violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., by terminating Plaintiff's employment and by refusing to make reasonable accommodations for Plaintiff's mental disability.

On May 1, 2006, Defendant filed its Motion for Summary Judgment (#13) and a Memorandum in Support (#14) with attached exhibits.  On May 22, 2006, Plaintiff filed her Response to the Motion for Summary Judgment (#15) and attached exhibits.  Defendant, on June 12, 2006, filed its Reply (#18), with attached exhibits, and a Motion to Strike (#19).

## ANALYSIS

### I.  MOTION TO STRIKE

On June 12, 2006, Defendant filed a Motion to Strike (#19) and a Memorandum in Support (#20).  Defendant argued that this court should strike Number 14 and Number 36 of Plaintiff's Statement of Additional Material Facts.  Plaintiff's Fact Number 14 stated that the "plaintiff's academic functioning is at a third to fifth grade level in most areas and her comprehension skills are limited."  In support of this fact, Plaintiff cited to a portion of the Individual Service Plan (ISP), dated February 27, 2002, which was completed by DSC.  Defendant argued that this fact must be stricken because it constitutes expert testimony.  Defendant argued that evidence regarding Plaintiff's level of academic functioning is clearly within the scope of Rule 702 of the Federal Rules of Evidence as it is not simply lay testimony but is, rather, testimony which requires "scientific, technical, or other specialized knowledge."  Defendant then argued:

> In this regard, Plaintiff neither disclosed any of the authors of the ISP as an expert nor did she provide an expert report by the deadline set by this court.  Defendant is prejudiced by the admission of the ISP because there is no way for Defendant to challenge the credibility of the ISP, nor to ascertain the basis of statements made within the ISP. In fact, it is not even clear to whom the statement regarding

6

Plaintiff's academic functioning should be attributed because the ISP

lists multiple authors, including the Plaintiff.

Defendant noted that Rule 26(a)(2) of the Federal Rules of Civil Procedure requires the disclosure of experts in order to guarantee "to both parties, reciprocally equal knowledge about what the opposing expert has (and more importantly has <u>not</u>) based her opinions upon and exactly what those opinions are." <u>See</u> <u>Hoffman v. Caterpillar, Inc.</u>, 368 F.3d 709, 715 n.3 (7th Cir. 2004) (emphasis in original). Defendant contended that Fact Number 14 must be stricken because Plaintiff should not be allowed to circumvent Rule 26(a)(2) of the Federal Rules of Civil Procedure and Rule 702 of the Federal Rules of Evidence.

On June 26, 2006, Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion to Strike (#21). Plaintiff argued that the opinions included in the ISP are admissible as business records under Rule 803(6) of the Federal Rules of Evidence. Plaintiff noted that, attached to the documents obtained from DSC, was a business records affidavit which established every foundational element necessary to admit into evidence the ISP and the other documents from DSC. Plaintiff also argued that the authors of the ISP, Shae Ellington, Plaintiff's job coach, and Greg Lewickyj, Plaintiff's case coordinator, were not retained or specially employed by Plaintiff to provide expert testimony, so no expert report was necessary under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Plaintiff stated that Ellington and Lewickyj are merely employees of the DSC who have knowledge of Plaintiff and her mental disability through the services provided to Plaintiff by DSC.

Plaintiff is correct that evidence may be admissible under the business records exception to hearsay. Rule 803(6) of the Federal Rules of Evidence provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) **Records of Regularly Conducted Activity.** —A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed R. Evid. 803(6).

A document is admissible as a business record under Rule 803(6) if: "1) the acts recorded therein were reported by a person with knowledge, 2) it was the regular practice of the [business] as a regularly conducted business activity to record such acts, 3) the acts were recorded at or near the time of their occurrence, and 4) the documents are properly authenticated 'unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.'"

8

Wheeler v. Sims, 951 F.2d 796, 802 (7th Cir. 1992); see also Jones v. Bd. of Trs. of Cmty. College

Dist. No. 508, 75 F. Supp. 2d 885, 888 (N.D. Ill 1999). It is within the discretion of the district court

to determine whether such evidence should be admitted. See Pierce v. Atchison Topeka & Santa

Fe Ry. Co., 110 F.3d 431, 444 (7th Cir. 1997); Mehta v. Council for Jewish Elderly, 1996 WL

272520, at *5 (N.D. Ill. 1996). "[A] foundation for admissibility may at times be predicated on

judicial notice of the nature of the business and the nature of the records as observed by the court."

Mehta, 1996 WL 272520, at *5, quoting 4 Weinstein's Evidence, ¶ 803(6)[02] 803-199-200 (March

1995). In Wheeler, the Seventh Circuit concluded that the district court did not abuse its discretion

when it admitted prison reports into evidence because they were "the types of official business

records prison authorities keep in the usual course of running a maximum security institution and

rely upon in determining when and what type of disciplinary measures are indicated, if any."

Wheeler, 951 F.2d at 805.

In this case, Plaintiff attached a "Business Records Affidavit" to the documents provided by

DSC. The affidavit was signed by Ronald J. Bribriesco, who was identified as the custodian of

records for DSC. In his affidavit, Bribriesco stated that the "records were kept by [DSC] in the

regular course of business," that "it was the regular course of business of [DSC] for a skilled and

qualified employee or representative of [DSC] with knowledge of the act, event, condition, or

opinion recorded to make the record or to transmit information thereof to be included in such

record," and that "the record was made at or near the time of the act, event, condition, or opinion."

This court notes that Defendant has not objected to the adequacy of Bribriesco's certification

or to the admission of the majority of these records. In fact, both parties have relied upon portions

of the DSC documents in making their arguments related to the Motion for Summary Judgment.

This court concludes, based upon the standard set out in <u>Wheeler</u>, that most of the documents are properly admissible as business records under Rule 803(6).  This court notes that, based upon the record, it appears that DSC is engaged in assisting persons with disabilities in obtaining employment and remaining employed.  Therefore, DSC's records regarding these efforts, and its assessments of the abilities of its clients to perform employment-related tasks, are clearly the type of records such a business would keep and rely upon.  <u>See</u> <u>Wheeler</u>, 951 F.2d at 805.

However, Defendant has objected to Number 14 in Plaintiff's Statement of Additional Material Facts, which is based upon an unattributed statement in the ISP that Plaintiff's "academic functioning appears to be at around the third to fifth grade levels in most areas."  This court notes that this statement seems at odds with other facts included in the record, including the undisputed fact that Plaintiff graduated from high school, where she took some regular high school classes, and other assessments of Plaintiff's communication skills.  Plaintiff argued that this assessment should be allowed because Rule 803(6) specifically provides for the admission of business records containing opinions and diagnoses.  However, this court agrees with Defendant that evidence regarding Plaintiff's level of academic functioning must be based upon "scientific, technical, or other specialized knowledge" and, therefore, must be presented by an expert witness.  <u>See</u> Fed. R. Evid. 702.

Rule 701 of the Federal Rules of Evidence provides that a witness who is not testifying as an expert may offer opinions or inferences that are: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  "Lay opinion testimony is admissible only to help the jury or the

10

court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events" and "most often takes the form of a summary of first-hand sensory observations." Chen v. Mayflower Transit, Inc., 224 F.R.D. 415, 417-18 (N.D. Ill. 2004), quoting United States v. Conn, 297 F.3d 548, 554 (7th Cir. 2002).   Expert opinion, by contrast, "brings to an appraisal of those facts a scientific, technological or other specialized knowledge that the lay person cannot be expected to possess." Chen, 224 F.R.D. at 418, quoting Conn, 297 F.3d at 554.   This court agrees with Defendant that, based upon these standards, information regarding Plaintiff's level of academic functioning is not something that a lay person could be expected to possess.   Therefore, this court concludes that an assessment of Plaintiff's level of academic functioning clearly constitutes an "expert opinion."  To present evidence regarding an expert opinion, the witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Plaintiff has not stated whether the statement regarding Plaintiff's level of academic functioning was authored by Ellington or Lewickyj.  Plaintiff has only stated that both Ellington and Lewickyj prepared the ISP.  Plaintiff has not shown that either Ellington or Lewickyj was qualified to make this assessment.  However, Plaintiff contends that, because Ellington and Lewickyj obtained their knowledge of Plaintiff's abilities from working with Plaintiff while she received services from DSC and was not acquired or developed in anticipation of litigation or trial, they are analogous to treating physicians  who may testify concerning diagnosis, causation and disability even though not identified as experts.  Plaintiff relies on Patel v. Hayes, 984 F.2d 214 (7th Cir. 1993), and Richardson v. Consol. Rail Corp., 17 F.3d 213, 218 (7th Cir. 1994).

However, in Musser v. Gentiva Health Servs., 356 F.3d 751, 756 (7th Cir. 2004), the Seventh

Circuit made clear that <u>all</u> witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure. <u>Musser</u>, 356 F.3d at 756.  Therefore, the Seventh Circuit confirmed that, under Rule 26, "even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony."[2] <u>Musser</u>, 356 F.3d at 758, <u>see also</u> <u>Sallenger v. City of Springfield</u>, 2005 WL 2001502, at *13 (C.D. Ill. 2005).  The Seventh Circuit specifically noted that both <u>Richardson</u> and <u>Patel</u> were decided based upon an interpretation of the pre-1993 Amendment version of Rule 26.  <u>Musser</u>, 356 F.3d at 756-57 n.2.

In this case, this court has concluded that an assessment of Plaintiff's academic level is expert testimony under Rule 702.  Therefore, to be admissible, the holder of that opinion must be disclosed as an expert.  Plaintiff has argued that Defendant will not be prejudiced if this court considers the contents of the ISP, noting that Ellington and Lewickyj were identified as witnesses who had knowledge about Plaintiff's mental retardation, but Defendant chose not to depose them.  This argument is foreclosed by <u>Musser</u> as well.  In <u>Musser</u>, the plaintiffs disclosed their treating physicians as witnesses, but did not disclose them as experts.  The district court determined that the witnesses identified by the plaintiffs in that case should not be permitted to testify as expert witnesses and disallowed any expert testimony to counter the motion for summary judgment. In affirming, the Seventh Circuit noted that "[o]ccurrence witnesses, including those providing 'lay opinions,' cannot provide opinions 'based on scientific, technical, or other specialized knowledge

---

[2]  The Seventh Circuit in <u>Musser</u> stated that it did not need to reach the issue "of whether an individual who serves in the capacity of 'treating physician' (or any analogous position) may nonetheless be required to submit a report under Rule 26(a)(2)(B)."  <u>Musser</u>, 356 F.3d at 758 n.3.  The court stated, however, that it "is clear that there is some expert testimony in the nature of the treating physician's testimony that does not require a report."  <u>Musser</u>, 356 F.3d at 758 n.3.  This court likewise does not need to decide the issue of whether a report was required in this case because it is undisputed that Plaintiff failed to identify an expert witness.

within the scope of Rule 702.'" <u>Musser</u>, 356 F.3d at 757 n.2.  The Seventh Circuit further noted that

Rule 26(a)(2)(A) provides that "[i]n addition to the disclosures required [regarding fact witnesses],

a party <u>shall disclose</u> to other parties the <u>identity of any person</u> who may be used at trial to present

evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." <u>Musser</u>, 356 F.3d at 756

(emphasis in original), <u>quoting</u> Fed. R. Civ. P. 26(a)(2).  The Seventh Circuit stated:

> Formal disclosure of experts is not pointless.  Knowing the
> identity of the opponent's expert witnesses allows a party to properly
> prepare for trial. [The defendant] should not be made to assume that
> each witness disclosed by [the plaintiffs] could be an expert witness
> at trial. [Citation omitted.]  The failure to disclose experts prejudiced
> [the defendant] because there are countermeasures that could have
> been taken that are not applicable to fact witnesses, such as
> attempting to disqualify the expert testimony on grounds set forth in
> <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.
> Ct. 2786, 125 L. Ed.2d 469 (1993), retaining rebuttal experts, and
> holding additional depositions to retrieve the information not
> available because of the absence of a report.

<u>Musser</u>, 356 F.3d at 757-58.

The Seventh Circuit then stated that the exclusion of non-disclosed evidence is automatic

and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.  <u>Musser</u>, 356

F.3d at 758, <u>citing</u> <u>Finley v. Marathon Oil Co.</u>, 75 F.3d 1225, 1230 (7th Cir. 1996).  The Seventh

Circuit concluded that the district court did not abuse its discretion in concluding that the plaintiffs

lacked substantial justification and in finding harm to the defendant.  Musser, 356 F.3d at 758-59.

In this case, Plaintiff has not even attempted to argue that the non-disclosure was justified. Further, this court agrees with Defendant that it would be prejudiced if this court considered the opinion regarding Plaintiff's level of academic functioning included in the ISP because Defendant cannot challenge the qualifications of the person who made this assessment or even ascertain the basis of the opinion. Accordingly, because Plaintiff failed to disclose an expert witness, the opinion expressed in Fact Number 14 in Plaintiff's Statement of Additional Material Facts is hereby stricken.

Defendant also argued that Plaintiff's Additional Fact Number 36 must be stricken. Plaintiff's fact number 36 stated, "On plaintiff's first day of employment Ellington observed that the plaintiff had no difficulty counting money or operating the cash register."  This fact was based upon a statement in a document created by DSC wherein Lewickyj recounted a statement made to him by Ellington.  Defendant argued that this statement is inadmissible as it is based upon hearsay within hearsay.  In her Response, Plaintiff stated that the note at issue in this case was prepared by Lewickyj in the regular course of business, with information supplied by Ellington.  Plaintiff therefore argues that this fact is based upon evidence admissible under Rule 803(6).  This court agrees with Plaintiff on this point.  See Peirick v. Ind. Univ., 2005 WL 1518663, at *1 n.2 (S.D. Ind. 2005) (district court rejected Defendant's argument that evidence was double hearsay where the factual information contained in the business records was based on statements from informants with knowledge).

For the reasons stated, Defendant's Motion to Strike (#19) is GRANTED in part and DENIED in part.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000), quoting Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999).  In making this determination, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 938 (7th Cir. 2003).  However, neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment.  Michas, 209 F.3d at 692.  Moreover, a plaintiff cannot defeat summary judgment by raising immaterial issues of fact.  See Jordan v. Summers, 205 F.3d 337, 345 (7th Cir. 2000).

### B.  ADA CLAIM

The ADA provides disabled persons with two principal workplace rights.  Heiden v.

Littlefuse, Inc., 2005 WL 2234652, at *2 (N.D. Ill. 2005).   The first prohibits employment discrimination against a qualified individual with a disability.   42 U.S.C. § 12112(a).   The second requires employers to provide reasonable accommodations to individuals with a disability who are otherwise qualified to perform their job.   42 U.S.C. § 12112(b).   As noted, Plaintiff claims that Defendant violated both of these rights.

The prevail under either theory, Plaintiff must show: (1) that she suffers from a disability as defined by the ADA; (2) that she is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that she has suffered an adverse employment action as a result of her disability.   See Jackson v. City of Chicago, 414 F.3d 806, 810 (7th Cir. 2005); Nese v. Julian Nordic Constr. Co., 405 F.3d 638, 641 (7th Cir. 2005); Smith v. Caterpillar Inc., 2006 WL 306652, at *5 (C.D. Ill. 2006); Heiden, 2005 WL 2234652, at *2. Plaintiff's "threshold burden" is to establish that she is disabled as that term in defined in the ADA. See Moore v. J.B. Hunt Transport, Inc., 221 F.3d 944, 950 (7th Cir. 2000); Thompson v. Archer Daniels Midland Co., 174 F. Supp. 2d 833, 838 (C.D. Ill. 2001); see also Scheerer v. Potter, 443 F.3d 916, 919 (7th Cir. 2006).   In its Motion for Summary Judgment, Defendant argued that it is entitled to judgment as a matter of law on Plaintiff's claims because: (1) Plaintiff cannot show that she is disabled within the meaning of the ADA; (2) Plaintiff cannot show that she is an otherwise qualified individual within the meaning of the ADA, or that the accommodation she sought was reasonable; and (3) Plaintiff cannot show that any adverse action was taken against her because of her alleged disability.   This court agrees with Defendant that Plaintiff has not shown that she suffers from a disability as defined by the ADA.   Because this is dispositive of Plaintiff's claim,

this court does not need to address Defendant's additional arguments.[3]

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). If Plaintiff's condition does not meet one of these categories, she is not disabled within the meaning of the ADA. See Nese, 405 F.3d at 641. In this case, only the first method of demonstrating a disability is at issue.[4] The determination of whether a person has a disability under the ADA is made on an individualized case-by-case basis. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002); Byrne v. Bd. of Educ., 979 F.2d 560, 565 (7th Cir. 1992); Sanglap v. LaSalle Bank, FSB, 2002 WL 47975, at *2 (N.D. Ill. 2002). This determination is made by applying a three-part test: (1) whether the individual suffers from a "physical or mental impairment," (2) whether the life activity on which the individual relies is a "major life" activity, and (3) whether the impairment "substantially limits" that major life activity. See Bragdon v. Abbott, 524 U.S. 624, 632, 638-39 (1998); Smith, 2006 WL 306652, at *5.

A "physical or mental impairment" includes "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." Mork v. Manpower, Inc., 1998 WL 417494, at *3 (N.D. Ill. 1998), quoting 29 C.F.R. § 1630.2(h)(2). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Sinkler v. Midwest Prop. Mgmt. Ltd P'ship, 209 F.3d 678, 683-84 (7th Cir. 2000), quoting 29 C.F.R. § 1630.2(i); see also Mork, 1998 WL

_____

[3] This court does note, however, that the Seventh Circuit has held that the ADA "does not require employers to offer special training to disabled employees." Williams v. United Ins. Co. of Am., 253 F.3d 280, 282 (7th Cir. 2001); see also Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 866 n.9 (7th Cir. 2005).

[4] Plaintiff has argued only that she has an actual disability, not that she has a record of such impairment or was regarded as having such an impairment.

417494, at *3.  "Substantially limits" means that "a person is either unable to perform a major life activity or is significantly restricted as to the condition, manner, or duration under which the individual can perform the major life activity as compared to the average person in the general population."  Armour v. City of Gary, 2006 WL 1660749, *7 (N.D. Ind. 2006), citing 29 C.F.R. 1630.2(j)(1); Sinkler, 209 F.3d at 685.  This is a high standard to meet.  Scheerer, 443 F.3d at 191, citing Toyota Motor Mfg., 534 U.S. at 197.  In order to substantially limit a major life activity under the ADA, the impairment must be significant.  Armour, 2006 WL 1660749, at *8, citing Byrne, 979 F.2d at 564.  In determining whether an impairment can be said to "substantially limit" the major life activity of the individual, a court should consider the nature and severity of the limitations, the actual or expected duration of the impairment, and the actual or anticipated permanent or long-term impact of the impairment. Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 506 n.3 (7th Cir. 1998), citing 29 C.F.R. § 1630.2(j)(2); Armour, 2006 WL 166 0749, at *7.

"To survive summary judgment, the plaintiff must provide specific facts establishing that there is a genuine issue of material fact as to whether she is substantially limited in a major life activity." Scheerer, 443 F.3d at 919.  "Specific facts are required; conclusory allegations will not do." Scheerer, 443 F.3d at 919.  An ADA claimant must specify which major life activity has been limited and only those grounds specifically raised will be considered by this court.  See Sinkler, 209 F.3d at 683; Thompson, 174 F. Supp. 2d at 838.

Plaintiff contends that she has shown that she has a mental impairment that substantially limits the major life activity of learning.  There is no real dispute that Plaintiff suffers from a mental impairment and that learning is a major life activity.  The dispute in this case is whether Plaintiff has presented sufficient evidence to show that her mental impairment "substantially limits" the major

18

life activity of learning.  Plaintiff relies primarily on her own testimony that she is a "slow learner,"

has trouble with comprehension and has had trouble in the past learning certain jobs.  She also points

out that she took special education classes in high school and, beginning in 1987, she has needed

the assistance of a job coach from DSC in order to learn the tasks associated with new employment.[5]

Plaintiff argues that she has established that "she experiences significant restrictions in her ability

to learn in comparison to the average person" and argues that "it is clear that the plaintiff is not able

to learn or comprehend in the same manner or with the same speed as the average person and

therefore is substantially limited in a major life activity."

      However, Plaintiff must do more than merely present evidence regarding her own

perceptions of her limitations; "instead, [she] has the burden to present sufficient 'comparator

evidence' to show [she] is 'significantly restricted' as compared to the 'average person in the general

population.'"  See Huizenga v. Elkay Mfg., 2001 WL 640973, at *6 (N.D. Ill. 2001); citing 29 C.F.R.

§ 1630.2(j)(1)(ii).  In its Reply, Defendant notes that Plaintiff ignores the fact that she successfully

completed regular classes in high school and points out that the evidence shows that she received

the highest score of "4" on all aspects of communication on the "Independent Living Skills

Inventory" performed by DSC.  Defendant argues that this score signified total independence in such

areas as "following complex directions" and "reasoning and problem solving."  Defendant contends

that the assessments performed by DSC actually show that Plaintiff has "good language

comprehension" and "the ability to learn a wide variety of skills."  This court additionally notes that

the evidence shows that Plaintiff graduated from high school, reads books once or twice a month,

---

[5] Plaintiff also argues that her academic functioning is at a third to fifth grade level in most areas.  However, this court has agreed with Defendant that this asserted fact must be stricken and cannot be considered by this court.

19

and handles her own financial affairs.

In <u>Mork</u>, the district court determined that the plaintiff did not show that his mental impairments substantially limited any major life activity.  <u>Mork</u>, 1998 WL 417494, at *3.  The court noted that the plaintiff claimed that his ability to learn his English and History classes in high school was impaired.  <u>See Mork</u>, 1998 WL 417494, at *3.  The district court determined, however, that this impairment was not substantially limiting "as it did not prevent Mork from passing either class, from being promoted to the next grade, from obtaining his GED or from continuing his education after high school."  <u>Mork</u>, 1998 WL 417494, at *3.  In <u>Huizenga</u>, the plaintiff stated that his "mental impairments interfere with [his] ability to think, reason, analyze, remember things, and orally communicate."  <u>Huizenga</u>, 2001 WL 640973, at *4.  The plaintiff described his mental process as "slow" and his hand-to-eye coordination as "very slow."  <u>Huizenga</u>, 2001 WL 640973, at *4.  The plaintiff stated that it takes him "a lot longer" to dress and feed himself, that he "get[s] confused easily, that he cannot express himself to others and that his "speech is sometimes not coherent." <u>Huizenga</u>, 2001 WL 640973, at *4.  The district court concluded that "these descriptions are simply too generic for a reasonable jury to conclude [the plaintiff] was significantly restricted in his ability to perform a major life activity as compared to the average person."  <u>Huizenga</u>, 2001 WL 640973, at *6.

This court concludes that a similar result is warranted in this case.  Here, Plaintiff completed regular classes and actually graduated from high school.  Her testimony that she is a "slow learner" and has difficulty with comprehension is simply not adequate to show that she is "substantially limited" in the major life activity of learning, especially considering the positive assessments of her abilities by the DSC.  Plaintiff has not provided this court with sufficient "specific facts" which

20

establish a genuine issue of material fact as to whether she is substantially limited in a major life activity.  See Scheerer, 443 F.3d at 919; Huizenga, 2001 WL 640973, at *6.  Plaintiff has not pointed to enough evidence in the record to show that she was prevented from performing, or was otherwise severely restricted in, the major life activity of learning.  See Scheerer, 443 F.3d at 920.

Based upon the record before this court, this court concludes that no rational trier of fact could find Plaintiff "disabled" under the ADA.  See Smith, 2006 WL 306652, at *7; Huizenga, 2001 WL 640973, at *6-7; Mork, 1998 WL 417494, at *3.  Because Plaintiff has failed to establish the first element of her prima facie case, that she was disabled within the meaning of the ADA, she is not entitled to recover under the ADA.  See Amadio v. Ford Motor Co., 238 F.3d 919, 930 (7th Cir. 2001); Moore, 221 F.3d at 950; Thompson, 174 F. Supp. 2d at 842.  Accordingly, this court agrees with Defendant that it is entitled to judgment as a matter of law on Plaintiff's claims under the ADA.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Strike (#19) is GRANTED in part and DENIED in part.

(2) Defendant's Motion for Summary Judgment (#13) is GRANTED.  Judgment is entered in favor of Defendant and against Plaintiff.

(3) This case is terminated.  Accordingly, the final pretrial conference scheduled on August 31, 2006, and the jury trial scheduled on September 11, 2006, are hereby VACATED.

ENTERED this 5th day of July, 2006.


s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

21